MATTHEW JAMES DAHER (State Bar No. 24105113)
ClientMail@TexasCAA.com
CRIMINAL APPEALS ADVOCATES P.C.
7600 Chevy Chase Sr. Suite 300
Austin, TX 78752
(737) 338-3233

Attorney for Petitioner

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CHRISTOPHER DAVID SESSION,<br><br>      Petitioner,<br><br>vs.<br><br>BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division,<br>      Respondent | Case No.:<br><br>**Petitioner Christopher David Session's Verified Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254; Memorandum of Points and Authorities in Support Thereof.** |

Petitioner, Christopher David Session (hereinafter "Petitioner"), through undersigned counsel, files this Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and in support thereof, avers as follows:

### A.    PROCEDURAL HISTORY

1.    Petitioner is Christopher David Session.

2.      Petitioner is unlawfully confined in the Texas Department of Criminal Justice, Jordan Unit, pursuant to a judgment of the Third Criminal District Court of Tarrant County, Texas, in *State v. Session*, case numbers 1773136 and 1781335.

3.      Petitioner is currently unlawfully confined in the Texas Department of Criminal Justice, Jordan Unit, 1992 Helton Road, Pampa, TX 79065.

4.      Bobby Lumpkin is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

5.      Mr. Session was indicted on May 5, 2023, and August 23, 2023, for possession of child pornography (Tex. Pen. Code § 43.26(d)) and sexual assault on a child (id. at 22.011(a)(2)) in Tarrant County, Texas.

6.      On January 31, 2024, a final judgment of conviction was entered following a plea agreement where Mr. Session waived a jury trial on the following charges:

- <u>Cause No. 1773136</u>, Second Degree Felony Sexual Assault with a Child
  - Sentenced to 13 years confinement in TDCJ

- <u>Cause No. 1781335</u>, Third Degree Felony Possession of Child Pornography
  - Sentenced to 2 years confinement in TDCJ
  - There were 9 counts for possession of child pornography in the Indictment, with Count 9 being the only image in the Indictment where "deviant sexual behavior" was charged
  - The plea agreement waived Counts 4 through 9 and contained Counts 1 through 3.

7.      Applicant did not file a direct appeal

### B.    FACTUAL HISTORY

It was alleged that Applicant used his cellular phone to take pictures of and record the complainant engaging in consensual sexual actions with him. It was further alleged that the complainant took photographs herself and sent them to Applicant. The complainant would transport herself to and from Applicant's house volitionally. Law enforcement alleged that Applicant encouraged individuals with whom he communicated electronically, such as complainant, to grow, not shave, their pubic hair, so that it would resemble the pubic area of a mature adult, not a prepubescent child. It was the complainant's parents who discovered and reported the messages.

The parents informed police officers that the complainant had been hurting herself at school. When the complainant's parents involuntarily committed her, this is when her father discovered the messages in her phone. The complainant's mother, who owned the complainant's cell phone, provided it to law enforcement for them to search. The complainant opined that she did not consider any videos or pictures she sent or received to be "bad," and stated that she did not have any friends.

The complainant related that she saw Applicant every day at her school and she, as well as many other individuals at the school, developed a crush on Applicant. She stated she initiated conversations with Applicant and would go "sit and chill" with him. Applicant then changed jobs and became employed by the complainant's mother, and the complainant would see him at his new place of employment as well. The complainant related that she approached Applicant and gave him a hug. The complainant related that she started texting Applicant at the end of the school year where he had gone to work for complainant's mother

and that complainant had been the one to obtain his phone number. She began communicating with Applicant after her relationship with her last boyfriend ended. Applicant could not provide concrete dates for any encounters or interactions.

Although the complainant stated she had sex with Applicant several times, she stated this occurred when she was 17 years old. The complainant stated that she would be in control during the sexual encounters. The complaint stated that she and Applicant ceased their sexual relationship once she entered the mental hospital. The complainant stated that it was Applicant who asked her to send boudoir photographs. The complainant willingly offered Applicant financial support during the course of their relationship. Law enforcement opined based on the complainant's date of birth and the date of certain Facebook messages that the complainant sent Applicant four nude photographs and two videos of herself when she was 16 years old.

The police conducted a custodial interrogation of Applicant and provided him his *Miranda* warnings prior to doing so. Throughout the course of the interrogation Applicant invoked his right to counsel several times, but the police never stopped questioning him, instead concluding themselves that his requests were not unequivocal although Applicant specifically stated, "This is definitely something I need my attorney for." To wit, Applicant stated he had "a million questions" for his attorney as he had never been in the situation of a custodial interrogation before. Applicant continued to bring up the notion of an attorney. Applicant characterized the allegations against him as "serious" and "crazy." Further, Applicant related that though he was seen at the hospital prior to the interview, he was not provided with his medicine.

In fact, Applicant, through his purported statements to law enforcement, negated the timeline of events as set forth by the complainant, to wit, that any sexual acts occurred prior to her sending photographs and videos.

The serious allegations raised herein warrant consideration of this application on the merits.

### C.    CLAIMS FOR RELIEF

### I.    CLAIM ONE

8.    Paragraphs 1 through 7 are hereby incorporated by reference.

9.    Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the Petitioner is legally, factually, and actually innocent of the offenses of which he was convicted.

10.    Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within writ and release Petitioner.

11.    The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim One is hereby incorporated by reference.

### II.    CLAIM TWO

12.    Paragraphs 1 through 11 are hereby incorporated by reference.

13.    Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments due to trial counsel's ineffectiveness.

14.    Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within writ and release Petitioner.

15.    The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Two is hereby incorporated by reference.

### D.    PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

1.    Take judicial notice of the transcripts, records, and files in *State v. Christopher Session*: Third Criminal District Court for Tarrant County, Texas, numbers 1773136 & 1781335.

2.    Order Respondent and the State of Texas to file and serve a certified copy of the record on appeal and show cause why Petitioner is not entitled to the relief sought;

3.    Grant a hearing to enable Petitioner to satisfy his remaining burden of proof, namely that the error had a substantial and injurious effect or influence in determining the jury's verdict;

4.    Find that the state court unreasonably determined the facts and unreasonably applied clearly established Federal law;

5.    Grant the petition for writ of habeas corpus; and

6.    Grant Petitioner any additional, appropriate relief as ordered by this Honorable Court.

Dated:                              Respectfully submitted,

                                    CRIMINAL APPEALS ADVOCATES P.C.


                                    By:    /s/ Matthew James Daher

                                           Attorney for Petitioner

## **VERIFICATION**

I, Matthew James Daher, hereby declare as follows:

I am an attorney admitted to practice law in the State of Texas. I represent Petitioner herein, who is confined and restrained of his liberty at the Texas Department of Criminal Justice, Jordan Unit, in Gray County. I have read the foregoing Petition for Writ of Habeas Corpus and am informed and believe the allegations therein are true.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Executed on _____, 2025, at San Antonio, Texas.


<u>/s/ Matthew James Daher</u>
Matthew James Daher

MATTHEW JAMES DAHER (State Bar No. 24105113)
ClientMail@TexasCAA.com
CRIMINAL APPEALS ADVOCATES P.C.
7600 Chevy Chase Sr. Suite 300
Austin, TX 78752
(737) 338-3233

Attorney for Petitioner

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| CHRISTOPHER DAVID SESSION,<br><br>Petitioner,<br><br>vs.<br><br>BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division,<br>Respondent | Case No.:<br><br>**Memorandum of Points and Authorities** |

Petitioner, through counsel Matthew Daher, hereby submits the following

Memorandum of Points and Authorities in support of his Petition, filed pursuant to 28

U.S.C. § 2254.

# TABLE OF CONTENTS

1.  Statement of the Case.................................................................................... 1

2.  Law and Argument ........................................................................................ 1

    A.  Habeas Standards ................................................................................. 1

    B.  Timeliness ............................................................................................. 3

    C.  Exhaustion ............................................................................................ 4

    D.  Substantive Claims… ........................................................................... 4

        I.    Claim One—Petitioner Was Denied His Federal Constitutional
              Right to Due Process Under the Fifth, Sixth, and Fourteenth
              Amendments Where the He Is Legally, Factually, and Actually
              Innocent.......................................................................................... 4

        II.   Claim Two—Petitioner Was Denied His Federal Constitutional
              Right to Due Process Under the Fifth, Sixth, and Fourteenth
              Amendments Due to Trial Counsel's Ineffectiveness ........................... 10

Conclusion… ................................................................................................... 14

Certificate of Service ...................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Amrine v. Bowersox*,

238 F.3d 1023 (8th Cir. 2001) ............................................................... 8

*Bell v. Cone*,
535 U.S. 685 (2002) ............................................................................... 4

*Berghuis v. Thompkins*,
560 U.S. 370, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ............................................. 15

*Boykin v. Alabama*,
395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) .................................................. 13

*Cleveland v. Bradshaw*,
693 F.3d 626 (6th Cir. 2012) ............................................................... 8

*Cooper v. Aaron*,
358 U.S. 1 (1958) ................................................................................ 9

*Dowthitt v. State*,
931 S.W.2d 244 (Tex. Crim. App. 1996) ........................................................... 15

*Ex parte Elizondo*,
947 S.W.2d 202 (Tex. Crim. App. 1996) ........................................................ 7, 12

*Ex parte Tuley*,
109 S.W.3d 388 (Tex. Crim. App. 2002) ........................................................ 7, 12

*Fratta v. Davis*,
889 F.3d 225 (5th Cir. 2018) ............................................................... 8

*Gomez v. Jaimet*,
350 F.3d 673 (7th Cir. 2003) ............................................................... 8

*Greene v. Fisher*,
565 U.S. 34 (2011) ............................................................................... 4

*Griffin v. Johnson*,
350 F.3d 956 (9th Cir. 2003) ............................................................... 8

*Harrington v. Richter,*
   562 U.S. 86 (2011) .................................................................................. 3

*Herrera v. Collins,*
   506 U.S. 390 (1993) ................................................................................ 7

*Maestas v. State,*
   987 S.W.2d 59 (Tex. Crim. App. 1999) ........................................... 15, 16

*McCarthy v. United States,*
   394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ......................... 14

*Mercadel v. Cain,*
   179 F.3d 271 (5th Cir. 1999) .................................................................. 5

*Michigan v. Mosley,*
   423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) ............................. 15

*Moore v. Johnson,*
   194 F.3d 586, 604 (5th Cir. 1999) ....................................................... 13

*Myers v. Collins,*
   919 F.2d 1074 (5th Cir. 1990) ............................................................... 6

*Neal v. Puckett,*
   239 F.3d 683 (5th Cir. 2001) .................................................................. 5

*Nobles v. Johnson,*
   127 F.3d 409 (5th Cir. 1997) .................................................................. 6

*Reed v. Quarterman,*
   504 F.3d 465 (5th Cir. 2007) .................................................................. 5

*Reeves v. Fayette SCI,*
   897 F.3d (3d Cir. 2018) ........................................................................... 8

*Riva v. Ficco,*
   803 F.3d 77 (1st Cir. 2015) ..................................................................... 8

*Rivas v. Fischer,*
   687 F.3d 514 (2d Cir. 2012) ................................................................... 8

*Rompilla v. Beard,*
    545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) ................................................ 12

*Rozzelle v. Sec'y, Fla Dep't of Corr.,*
    672 F.3d 1000 .................................................................................................................. 8

*State Correctional Institution at Fayette, et al., v. Jerry Reeves,*
    139 S.Ct. 2713 ................................................................................................................. 8

*State v. Guerrero,*
    400 S.W.3d 576 (Tex. Crim. App. 2013) ...................................................................... 14

*Strickland v. Washington,*
    466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ............................................ 12, 13

Under *Miranda v. Arizona,*
    483 U.S. (1966) .............................................................................................................. 15

*United States v. Ruiz,*
    536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) ......................................... 14, 15

*Valdez v. Cockrell,*
    274 F.3d 941 (5th Cir. 2001) .......................................................................................... 5

*Vasquez v. Hillery,*
    474 U.S. 254 (1986) ....................................................................................................... 6

*Virgil v. Dretke,*
    446 F.3d 598 (5th Cir. 2006) ..................................................................................... 12, 13

*Wiggins v. Smith,*
    539 U.S. 510, 123 S.Ct. 2527 (2003) .......................................................................... 13

*Williams v. Taylor,*
    529 U.S. 362 (2000) ....................................................................................................... 4

*Yarborough v. Alvarado,*
    541 U.S. 652 (2004) ....................................................................................................... 4

**Statutes**

28 U.S.C. § 2244(d)(1)-(2) .................................................................................................. 6

28 U.S.C. § 2254 ................................................................................................................... 3

28 U.S.C. § 2254(b)-(c)...................................................................................6

28 U.S.C. § 2254(d)(1)................................................................................4, 5

Texas Penal Code § 22.011...........................................................................9

§ 22.011(c)(1)...............................................................................................9

§ 2254(d)...................................................................................................3, 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

### 1.  Statement of the Case

Petitioner hereby incorporates paragraphs 1-15 of his Verified Petition for Writ of Habeas Corpus by a Person in State Custody, above, which includes the statement of facts.

### 2.  Law and Argument

### A.  Habeas Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under 28 U.S.C. § 2254(d)(1), a state court's decision is "contrary to . . . clearly established Federal law," as determined by the United States Supreme Court, "if the state court applies a rule different from the governing law set forth in our cases, or if it decides

a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002). A state court's decision "involve[s] an unreasonable application of[ ] clearly established Federal law" as determined by the U.S. Supreme Court, within the meaning of § 2254(d)(1), "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. 362, 407 (2000). The Supreme Court has underscored that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Accordingly, this Honorable Court may not grant habeas relief if "fairminded jurists could disagree over whether" the state court's decision was correct. *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

The governing law is the law that existed at the time the state court rendered its decision. *Greene v. Fisher,* 565 U.S. 34, 40 (2011). With regard to Fifth Circuit Court of Appeals opinions, such may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help to determine what law is "clearly established." *Reed v. Quarterman,* 504 F.3d 465, 478 (5th Cir. 2007).

The AEDPA requires courts to presume state court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. *Valdez v. Cockrell,* 274 F.3d 941, 947 (5th Cir. 2001). This presumption only applies when the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing

of the matter for procedural reasons. *Neal v. Puckett*, 239 F.3d 683, 686-87 (5th Cir. 2001);

*Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999).

## B. Timeliness

Pursuant to 28 U.S.C. § 2254(d), a "1-year period of limitation shall apply to an

application for a writ of habeas corpus by a person in custody pursuant to the judgment of

a State court." 28 U.S.C. § 2254(d)(1). The limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Petitioner respectfully submits that his instant petition is timely. Petitioner was

sentenced on January 31, 2024, and refrained from filing a direct appeal. Thus, his

judgment became final 30 days thereafter; on March 1, 2024. Petitioner timely files this

instant petition before March 1, 2025.

### C. Exhaustion

A state prisoner is required to exhaust available state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)-(c); *Nobles v. Johnson,* 127 F.3d 409, 419–420 (5th Cir. 1997). "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery,* 474 U.S. 254 (1986). Before a Texas inmate has exhausted his state remedies, he must fairly present the substance of his federal claims to the highest state court either in a petition for discretionary review or in an application for a writ of habeas corpus. *Myers v. Collins,* 919 F.2d 1074, 1076 (5th Cir. 1990).

Petitioner has not yet exhausted his claims in the Texas state courts. However, as set forth in further detail below, Petitioner's actual innocence excuses the lack of exhaustion. Moreover, along with the instant writ, Petitioner files a motion for a stay while he exhausts his instant claims in state court.

### D. Substantive Claims

### I. Claim One—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Where He is Legally, Factually, and Actually Innocent.

In 1993, the Supreme Court (reviewing a Texas death penalty case) assumed for the sake of argument without deciding that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional. ." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The Court of Criminal Appeals decided that it is "clear . . . that the incarceration of an innocent person is as much a violation of the Due Process Clause as is the execution of such a person. It follows that claims of actual

innocence are cognizable by this Court in a postconviction habeas corpus proceeding whether the punishment assessed is death or confinement." *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996).

"In the case of a *Herrera*-type claim of actual innocence [in which newly discovered evidence proves innocence], the petitioner must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence." *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). A guilty plea does not prevent or bar applicants from asserting and proving innocence. *Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002).

There is a circuit split with regard to what constitutes "new reliable evidence"—i.e. whether that means the evidence must be newly discovered and previously unavailable, or whether it is sufficient that the evidence was available but not presented at trial—trial counsel in this matter presented no evidence to the jury by forcing Petitioner to plead guilty. The Court of Appeals for the Eighth Circuit held that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001) (internal citation and quotation marks omitted). The Courts of Appeals for the Seventh and Ninth Circuits, however, conclude that petitioners can satisfy the actual innocence standard's new evidence requirement by offering "newly presented" exculpatory evidence, meaning evidence not presented to the jury at trial. *See Gomez v. Jaimet*, 350 F.3d 673, 679-80 (7th Cir. 2003); *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003). The Courts of Appeals for the First, Second, and Sixth Circuits have similarly suggested that actual innocence can

be shown by relying on newly presented—not just newly discovered—evidence of innocence. *See Riva v. Ficco*, 803 F.3d 77, 84 (1st Cir. 2015); *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012); *Rivas v. Fischer*, 687 F.3d 514, 543, 546-47 (2d Cir. 2012).

Though the Fifth Circuit Court of Appeals acknowledged the circuit split, it did not weigh in. *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018). The Eleventh Circuit Court of Appeals refrained from reaching the issue of whether the petitioner's evidence that was available at trial but was not presented should be considered "new" for purposes of *Schlup*. *Rozzelle v. Sec'y, Fla Dep't of Corr.*, 672 F.3d 1000, 1018 n. 21 (11th Cir. 2012).

In *State Correctional Institution at Fayette, et al., v. Jerry Reeves*, 139 S.Ct. 2713, No. 18-543 (2019) (memorandum opinion), the United States Supreme Court declined to grant a petition for writ of certiorari to the United States Court of Appeals for the Third Circuit regarding its holding in *Reeves v. Fayette SCI*, 897 F.3d 153 (3d Cir. 2018), which held that when a state prisoner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the actual innocence miscarriage of justice gateway to excusing procedural default of a state prisoner's claim. Thus, the Supreme Court has tacitly held that this is the standard for adjudging an actual innocence claim and constitutes the law of the land. *See, exempli gratia, Cooper v. Aaron*, 358 U.S. 1 (1958) (states are bound by the United States Supreme Court's decisions and must enforce them even if the states disagree with them.)

Here, Applicant respectfully submits that he is legally, factually, and actually innocent of the charges to which he pled guilty, and that his guilty plea was based on counsel's deficient

investigation into the circumstances of the accusations and erroneous legal advice. As set forth above, law enforcement concluded that a sexual encounter occurred between the complainant and Applicant when the complainant was 16. However, this was based on the complainant's vague and vacillating timeframes. It is beyond cavil that the complainant was not able to provide concrete dates of the supposed sexual encounters. Moreover, Applicant's statements to law enforcement as set forth above clearly refuted many of the complainant's allegations vis-à-vis date, time, and location. The complainant was essentially forced to cast aspersions upon Applicant by her parents as a ruse to cover up her own mental health concerns.

Thus, counsel had no basis upon which to advise Applicant to plead guilty to a crime of which he was innocent. Texas Penal Code § 22.011 requires that, for the allegations levied against Applicant, the complainant be younger than 17 years of age. (P.C. § 22.011(c)(1)). The complainant repeatedly told Applicant that she was 18 or 19 years old. (Exhibit A). Detective Ray Chavez informed Applicant that the complainant was 17 during the relevant periods. (Exhibit A). Counsel was aware that the complainant insinuated that the allegations were levied in response to her father's involuntarily committing her to a mental hospital but failed to pursue this defense at trial, or take advantage of the fact that the allegations were forwarded by an individual who was receiving treatment for mental health concerns. (Exhibit A). Applicant specifically asked counsel to interview the complainant to give her an opportunity to recant, but he never did so. (Exhibit A).

Moreover, counsel repeated admonished Applicant that he was being charged with aggravated sexual assault of a child under P.C. § 22.021, which carried a more serious

penalty and would require the State to prove extra factors contained in (2)(A)-(C), which are not applicable to the instant case. (Exhibit A). Further evidence of counsel's consciousness of his misadvice manifests in that he instructed Applicant not to talk to anyone about his case. (Exhibit A). Applicant just answered all the questions posed by the judge during his colloquy pursuant to his attorney's instructions, not pursuant to the reality of the matter. (Exhibit A).

As set forth above, Applicant was experiencing health complications prior to his interview with police. (Exhibit A). To wit, Applicant was hospitalized and almost died prior to his arrest due to Type 2 diabetes, pancreatitis, and extremely high blood pressure. (Exhibit A). As a result, Applicant was prescribed various medications to counteract his dizziness, light headedness, and body shakes which he was not provided prior to or during his interview. (Exhibit A).

It was clear to Applicant that counsel was either not paying attention during their meetings or that counsel was not qualified to handle a case involving allegations of this magnitude since counsel repeatedly asked Applicant questions to which Applicant already provided the answer myriad times. (Exhibit A). Counsel always rushed out of the meetings under the ruse of health issues or deaths in the family. (Exhibit A). Counsel did not appear attentive during the scarce time he met with Applicant. (Exhibit A). Counsel quickly glossed over the terms of the agreement with Applicant in the court's holding cell prior to Applicant's plea and Applicant was unaware of the actual terms thereof, let alone the nature of his own charges. (Exhibit A). Counsel only let Applicant "glance" at the discovery

packet such that Applicant was not able to make a knowing, voluntary, or informed decision regarding his case. (Exhibit A).

Counsel also failed to utilize a mitigation expert to highlight Applicant's glowing character to obtain a better plea deal. To wit, Applicant is the caregiver to his two young sons. (Exhibit A). Applicant was an active member of the Omega Psi Phi fraternity and was heavily involved in back-to-school drives, Thanksgiving drives, Christmas Toy drives, Carter Bloodcare drives (and donated), street and park cleanups, coat drives, feeding the homeless, visiting retirement homes, acting as a voter registrar, and volunteering at his high school's "Battle of the Bands" and talent contests. (Exhibit A). Applicant was also a special education teacher at the Social Emotional Academic Success program, and coached football and basketball. (Exhibit A).

On this record, Applicant has met his burden of showing by clear and convicting evidence that no reasonable juror would have convicted him in light of the evidence that trial counsel was ineffective for failing to present. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). The fact that there was a plea agreement as to punishment does not bar him from asserting and proving innocence. *Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002). Whereby, Applicant respectfully requests that this Honorable Court grant this writ of habeas corpus and order that Applicant be exonerated of his conviction.

## II.     Claim Two—Petitioner Was Denied His Federal Constitutional Right to Due Process Under the Fifth, Sixth, and Fourteenth Amendments Due to Trial Counsel's Ineffectiveness

The Supreme Court set out the governing principles of ineffective assistance of counsel claims in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed on a charge of ineffective assistance of counsel in state court, a petitioner must satisfy both prongs of *Strickland's* two-part test by demonstrating that (1) counsel's performance was deficient and (2) counsel's deficient performance caused actual prejudice to the petitioner's defense. *Id.* at 687, 104 S.Ct. 2052.

To prove deficient performance, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness," *Virgil v. Dretke,* 446 F.3d 598, 608 (5th Cir. 2006), under the then "prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In evaluating counsel's performance, the Supreme Court has long referred to the American Bar Association ("ABA") Standards for Criminal Justice as "guides to determining what is reasonable." *Rompilla v. Beard,* 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527 (2003); *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Moreover, courts must apply a "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil,* 446 F.3d at 608 (quotation omitted). Because "every effort [must] be made to eliminate the distorting effects of hindsight," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil,* 446 F.3d at 608 (quotations

omitted). At the same time, however, courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

As set forth above, counsel was clearly deficient in his advice to Applicant such that Applicant's guilty plea cannot be said to have been knowing, voluntary, or intelligent.

An agreement to plead guilty entails a waiver of three significant constitutional rights: The right against self-incrimination; the right to confrontation; and the right to a trial by jury. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Because such significant constitutional rights are at stake, due process requires that their relinquishment in the course of a guilty plea be undertaken voluntarily, with sufficient awareness of the consequences. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). A defendant "must have sufficient awareness of the relevant circumstances," and must possess an understanding of the law in relation to the facts. *Id.* To determine whether a defendant's "awareness" was "sufficient" at the time of his plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant. *State v. Guerrero,* 400 S.W.3d 576, 588 (Tex. Crim. App. 2013).

But a defendant need not have a comprehensive awareness of the specific impact that relinquishing his constitutional rights may have; sufficient awareness does not require complete knowledge of the prosecution's case. In *United States v. Ruiz,* 536 U.S. 622, 625–26, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), the United States Supreme Court upheld the constitutionality of a federal "fast track" plea bargain process whereby the defendant agreed to waive his due process right to the pretrial disclosure of impeachment information. The Supreme Court concluded that *Ruiz*'s ignorance of potential impeachment information did not render his guilty plea involuntary for due process purposes. *Id.* at 629, 122 S.Ct. 2450. The Supreme Court observed that

> the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide.

*Id.* at 629–30, 122 S.Ct. 2450. A guilty plea does not violate due process, the Supreme Court observed, even when the defendant enters it while operating under various misapprehensions about the nature or strength of the State's case against him—for example, misestimating the likely penalty, failing to anticipate a change in law respecting punishment, miscalculating the admissibility of a confession, or misjudging the availability of a potential defense. *Id.* at 630–31, 122 S.Ct. 2450.

Further, trial counsel was ineffective for failing to move to suppress Applicant's confession where his invocation of his right to counsel was not scrupulously honored by

law enforcement. Under *Miranda v. Arizona*, 483 U.S. 436 (1966), law enforcement officers are required to respect a defendant's invocation of his right to remain silent by cutting off questioning. *Michigan v. Mosley*, 423 U.S. 96, 103-04, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). A suspect's right to cut off questioning must be "scrupulously honored." *Id*. But a suspect's invocation of this right must be unambiguous, and there is no requirement that law enforcement clarify ambiguous remarks. *Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). A statement that a person "needs to rest" is not an unambiguous invocation of the right to cut off questioning. *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).

Once a person has unambiguously invoked his right to cut off questioning, a resumption of questioning is permissible only if it is consistent with scrupulously honoring the defendant's invocation. *Maestas v. State*, 987 S.W.2d 59 (Tex. Crim. App. 1999). That inquiry depends on the balancing of five factors: (1) whether the suspect was informed of his right to remain silent prior to the initial questioning; (2) whether the suspect was informed of his right to remain silent prior to the subsequent questioning; (3) the length of time between initial questioning and subsequent questioning; (4) whether the subsequent questioning focused on a different crime; and (5) whether police honored the suspect's initial invocation of the right to remain silent. *Id*.

As set forth above, Applicant clearly and unambiguously invoked his right to counsel during his interrogation on multiple occasions. Although the law enforcement officers in question opined that Applicant's request was unambiguous and continued to press him, trial counsel was ineffective for failing to test law enforcement's conclusions

vis-à-vis a suppression motion in front of an impartial judge. Moreover, the interviewers employed high pressure psychological tactics such as invoking the Bible, Applicant's fraternity, and reading a handwritten note to Applicant from his son which clearly operated to overbear Applicant's will and ability to think impartially. Applicant was also laboring under a medical emergency which precluded his ability to make any knowing, voluntary, or intelligent decisions. Without Applicant's confession, the State would have been left with the complainant's word, which was wholly devoid of evidentiary weight as set forth above.

## CONCLUSION

WHEREFORE, based on the foregoing, this Honorable Court should grant Petitioner's Petition for Writ of Habeas Corpus.

Dated:                                    Respectfully submitted,

CRIMINAL APPEALS ADVOCATES P.C.

By:    /s/ Matthew James  Daher

Attorney for Petitioner

## <u>CERTIFICATE OF SERVICE</u>

Case Name: Christopher Session on Habeas Corpus

I hereby certify that on _____, 2025, I electronically filed the following document with the Clerk of the Court using the CM/ECF system:

**Verified Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities**

I also served Petitioner's **Verified Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities**, by causing to be placed a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail, addressed as follows:

     LEGAL MAIL
     Christopher Session, TDCJ No. 02490952
     Texas Department of Criminal Justice
     Jordan Unit
     1992 Helton Road
     Pampa, TX 79065
     **Via US Mail**

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at San Antonio, Texas, on _____, 2025.

/s/ Matthew James Daher
_____
Matthew James Daher

EXHIBIT A

No. _____

(Underlying Cause Nos. 1773136 & 1781335)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT |
| | § | COURT |
| v. | § | |
| | § | |
| CHRISTOPHER DAVID | § | NO. 3 |
| SESSION, | § | |
| | § | |
| APPLICANT. | | OF TARRANT COUNTY, TEXAS |

## **APPLICANT'S DECLARATION IN SUPPORT OF APPLICANT'S WRIT OF HABEAS CORPUS UNDER TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 11.07**

I, Christopher David Session, pursuant to 18 U.S.C. § 1621 and Texas Penal Code § 37.02, hereby declare that the following is true and correct:

1.     My name is Christopher David Session.

2.     The complainant repeatedly told me that she was 18 or 19 years old.

3.     Detective Ray Chavez informed me that the complainant was 17 during the relevant periods.

4.     My attorney was aware that the complainant insinuated that the allegations were levied in response to her father's involuntarily committing her to a mental hospital but failed to pursue this defense at trial or take advantage of the fact that the allegations were forwarded by an individual who was receiving treatment for mental health concerns.

5.    I specifically asked counsel to interview the complainant to give her an opportunity to recant, but he never did so.

6.    My attorney repeated admonished me that I was being charged with aggravated sexual assault of a child under P.C. § 22.021, which carried a more serious penalty and would require the State to prove extra factors contained in (2)(A)-(C), which are not applicable to the instant case.

7.    My attorney instructed me not to talk to anyone about my case.

8.    I just answered all the questions posed by the judge during the colloquy pursuant to my attorney's instructions, not pursuant to the reality of the matter.

9.    I was experiencing health complications prior to my interview with police.

10.    I was hospitalized and almost died prior to my arrest due to Type 2 diabetes, pancreatitis, and extremely high blood pressure.

11.    As a result, I was prescribed various medications to counteract my dizziness, light headedness, and body shakes which I was not provided prior to or during my interview.

12.    It was clear to me that my attorney was either not paying attention during our meetings or that he was not qualified to handle a case involving allegations of this magnitude since counsel repeatedly asked me questions to which I already provided the answer myriad times.

13. My attorney always rushed out of the meetings under the ruse of health issues or deaths in the family.

14. My attorney did not appear attentive during the scarce time he met with me.

15. My attorney quickly glossed over the terms of the agreement with me in the court's holding cell prior to my plea and I was unaware of the actual terms thereof, let alone the nature of the charges.

16. My attorney only let me glance at the discovery packet, and I was unable to ascertain any information during this time.

17. My attorney failed to utilize a mitigation expert to highlight my character to obtain a better plea deal.

18. I am the caregiver to my two young sons.

19. I was an active member of the Omega Psi Phi fraternity and was heavily involved in back-to-school drives, Thanksgiving drives, Christmas Toy drives, Carter Bloodcare drives (and donated), street and park cleanups, coat drives, feeding the homeless, visiting retirement homes, acting as a voter registrar, and volunteering at my high school's "Battle of the Bands" and talent contests.

20. I was also a special education teacher at the Social Emotional Academic Success program, and coached football and basketball.

21.    I believe that if this Honorable Court were to grant an evidentiary hearing, that the Court's subpoena power would permit me to subpoena the evidence referred to throughout the petition and these witnesses to testify before the Court, and that this evidence and these witnesses would establish the above averments.

Dated:    March 3, 2025

Signed:                                    _/s/ Matthew J. Daher with permission_
                                              _on behalf of client Christopher David Session_